UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE C. HALLORAN,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security<br><br>Defendant. | No. 2:18-cv-3230-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 15 & 18. For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

I. Background

Plaintiff filed an application for a period of disability and DIB, alleging that she had been disabled since March 24, 2015. Administrative Record ("AR") at 188-89. After her application was denied initially and upon reconsideration (*id.* at 85-88, 93-98), a hearing was held before administrative law judge ("ALJ") Daniel G. Heely (*id*. at 33-60). Plaintiff was represented by counsel at the hearing, at which she and a vocational expert testified. *Id.*

1

On December 11, 2017, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1] *Id*. at 20-28. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2020.

2. The claimant has not engaged in substantial gainful activity since March 24, 2015, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: status post right upper extremity surgery; status post multiple breast surgeries (20 CFR 404.1520(c)).

\* \* \*

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs; can occasionally balance, stoop, kneel, or crouch but never crawl; can never work around hazards (such as moving, dangerous machinery or unprotected heights; no operation of motor vehicles); with the right dominant upper extremity, can engage in no more than occasional fingering/handling and no pushing/pulling.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

7. The claimant was born [in] 1978 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

\* \* \*

11. The claimant was not under a disability, as defined in the Social Security Act, from March 24, 2015, through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 22-28.

Plaintiff's request for Appeals Council review was denied on October 24, 2018, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

/////

/////

3

II. <u>Legal Standards</u>

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. <u>Analysis</u>

Plaintiff argues that the ALJ erred in (1) rejecting the opinion of her treating physician, (2) finding she can occasionally perform fingering and handling with her right upper extremity, (3) rejecting her subjective complaints absent clear and convincing reasons, and (4) rejecting lay testimony without sufficient justification. As explained below, the ALJ erred in rejecting the opinion from plaintiff's treating physician.

A. <u>Relevant Legal Standards</u>

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.

4

1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id*. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

B. Background

In March 2015, plaintiff sought treatment for right wrist pain. AR 328. Medical records reflect plaintiff had a history of recurrent giant cell tumor at the distal radius requiring multiple surgeries, including a total fusion of the right wrist. *Id*. at 328, 337. An x-ray revealed a fracture of the distal fusion plate due to lack of carpal fusion, which was suspected to be the cause of plaintiff's wrist pain. *Id*. at 329-34. Plaintiff's wrist impairment was initially treated conservatively with a Kenalog and lidocaine injection, which was failed to relieve her pain. *Id*. at 335-37. Plaintiff was subsequently evaluated by Dr. Michael Macavoy, an orthopedic surgeon, who noted instability in plaintiff's right distal radial ulnar joint. *Id*. at 345, 375.

In early June 2015, plaintiff underwent surgery to replace the right distal radial ulnar joint and remove existing distal hardware. *Id*. at 372-77. Physical therapy notes from one month after the surgery documented functional deficits in griping, grasping, pushing, pulling, lifting, and carrying with the right hand, as well as complaints of pain and difficulty dressing and grooming. *Id*. at 473. In early August 2015, plaintiff reported she was still experiencing "lots of pain" and swelling. *Id*. at 481. Although plaintiff completed her physical therapy approximately a week

later, she continued to report constant pain in her right wrist. *Id*. at 484-85. Treatment notes from November 2015 reflect that plaintiff was able to successfully wean off her narcotic pain medication, but she continued to report wrist pain with activity. *Id*. at 854. Examination of her wrist was largely unremarkable, with only some tenderness on the ulnar side and Tinel signs on the ulnar nerve. *Id*. at 854. At that time, Dr. Macavoy noted plaintiff's joint replacement appeared stable and that it was "not clear exactly why" plaintiff's wrist was still hurting. *Id*. at 854-55.

In January 2016, Dr. Macavoy completed a medical source statement, which states that he had been treating plaintiff's right wrist pain since 2005. *Id*. at 816-17. It was Dr. Macavoy's opinion that plaintiff was limited to performing less than sedentary work due to limitation in lifting, fingering, and reaching. *Id*. at 816. He explained that plaintiff was unable to use her right wrist/hand due to experiencing "pain by just moving [her] right upper extremity." *Id*. at 817.

The record also contains opinions from two non-examining physicians, Dr. L. Kiger and Dr. L. C. Chiang. Conflicting with Dr. Macavoy's opinion, both of these non-examining physicians opined that plaintiff could lift 20 pound occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; never climb ladders, ropes, or scaffolds; occasionally crawl; and could occasionally perform handling and fingering, but never pushing or pulling, with her right upper extremity. *Id*. at 68-69, 79-80.

In assessing plaintiff's RFC, the ALJ rejected Dr. Macavoy's opinion in favor of the opinions provided by Dr. Kiger and Dr. Chiang. *Id*. at 25.

C. Discussion

As argued by plaintiff, the ALJ failed to provide specific and legitimate reasons supported by substantial for rejecting Dr. Macavoy's treating opinion.

First, the ALJ found that Dr. Macavoy's opinion was "not persuasive in light of the claimant's actual use of her right upper extremity, as detailed above." AR 28. But the ALJ's decision did not identify any activities that plaintiff specifically performed with her right hand. For instance, the ALJ observed that plaintiff goes outside, socializes, attends church, and is able to count change, none of which required plaintiff to use her right (or even left) hand. The ALJ

also observed that plaintiff is able to go shopping. *Id*. at 24. But the record indicates that plaintiff's husband and son usually helped her shopping, and there is nothing in the record suggesting plaintiff even infrequently used her right upper extremity while performing this activity. The ALJ also observed that plaintiff was able to drive a car, but he failed to note that all evidence of record showed that she only used her left hand while driving. *Id*. at 40, 244, 253. The ALJ's decision also noted plaintiff was a volunteer cheerleading coach. But the portion of the record discussing plaintiff's involvement in cheerleading also states that plaintiff volunteered to be a coach under an agreement that she would not have to use her hand. *Id*. at 257. Plaintiff also explained that her coaching role primarily involved providing verbal instructions to children. *Id*. Lastly, the ALJ specifically acknowledged that plaintiff "cares for minor children and completes personal care with the left hand. She makes meals and does chores with the left hand." *Id*. at 24. Thus, the ALJ's decision does not discuss any evidence demonstrating plaintiff's actual use of her right hand that provides specific and legitimate reasons for rejecting Dr. Macavoy's treating opinion.

      The ALJ also rejected Dr. Macavoy's opinion because it was "conclusory, lacking analysis, explanation, or citation to the medical record." AR 25. An ALJ may reject a treating physician's opinion "that is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Dr. Macavoy's opinion was obtained by way of a check-the-box form that was provided to him for such use. But he did not merely check the boxes. The form he completed also included written explanations for the opinion provided, which was properly explained and supported. Specifically, Dr. Macavoy stated that his opinion was supported by plaintiff's right wrist arthroplasty and history of giant cell tumor in the bone of her wrist. AR 816. He also noted that plaintiff experiences "pain by just moving [her] right upper extremity." *Id*. at 817. Thus, contrary to the ALJ's finding, Dr. Macavoy did provide an explanation for his opinion that plaintiff was limited to less than sedentary work due to an inability to perform lifting, fingering, and reaching.

      But even if Dr. Macavoy had failed to identify the basis for his opinion, a lack of explanation would not constitute a specific and legitimate reason for rejecting his opinion under

the circumstances of this case. As noted above, the ALJ rejected Dr. Macavoy's opinion in favor of the opinions from Dr. Kiger and Dr. Chiang. Neither of these physicians provided a detailed explanation of the evidence supporting their opinions. To reject a treating opinion on the basis that it is conclusory and unsupported in favor of a non-examining opinion that is, at the very least, equally conclusory is not a legitimate reason for discounting the treating doctor's opinion. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013) (holding that the ALJ's "failure to apply the same level of scrutiny to the opinions of the consultative doctors on which he relied, let alone the greater scrutiny of such sources called for by 20 C.F.R. § 404.1527, further demonstrates that his assessment of Dr. Onady's opinions failed to abide by the Commissioner's regulations and therefore calls into question the ALJ's analysis.").

Lastly, the ALJ rejected Dr. Macavoy's opinion because it was "contradicted by the other medical experts." AR. The only other medical opinions addressing plaintiff's physical limitations were from Dr. Kiger and Dr. Chiang. These non-examining opinions do not constitute substantial evidence that could support the rejection of Dr. Macavoy's treating opinion. *See Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017) ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies that rejection" of a treating opinion).

Accordingly, the ALJ erred by failing to provide specific and legitimate reasons for rejecting Dr. Macavoy's treating opinion. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record."). The matter must therefore be remanded for proper consideration of the medical evidence. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted).

IV. <u>Conclusion</u>

Based on the foregoing, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for further proceedings consistent with this order; and

4. The Clerk of Court is directed to enter judgment in plaintiff's favor and close the case.

DATED: March 27, 2020.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE